v. City of LaGrange May it please the Court, I am Allison Thompson here on behalf of the City of LaGrange asking this Court to reverse the District Court's denial of the City's claim to state action immunity from the federal anti-dress claims. That ruling was an error primarily for two reasons. First, the Georgia Legislature has articulated clearly and expressed affirmatively its intent that municipalities should enjoy anti-trust immunity to the same degree and extent as enjoyed by the state itself when regulating water utilities. And that means full and complete immunity from federal anti-trust laws. Second, the District Court also erred in interpreting and applying binding precedent, specifically the Supreme Court's decision in Hallie and this Court's decision in McCallum, because the holdings of those cases support the City's immunity claim. Conversely, the Tenth Circuit's ruling in K-Electric is distinguishable from this case primarily because it involved a claim of immunity based on a general rather than a specific state authorization to regulate. With respect to the regulation of water utility... Well, you suggest that Hallie involved some sort of a tying arrangement, right? Yes. But so did K. It did. So you can't distinguish those two cases on that ground. All three cases involved tying claims. However, the underlying statutes at issue and the authorizations through those statutes are very different. In this case, with respect to the regulation of water utility, the conduct at issue, LaGrange enjoys full immunity from federal anti-trust laws. It is clear from every opinion addressing this issue that the availability and the scope of municipal Parker immunity is determined by the state. Can you, do you think there's any, and this doesn't mean you lose, but is there any principle limit to your position? In other words, can a municipality tie water services to any other industry? In other words, can a city say, for example, we'll give you water if you use our police department and pay us. We will give you water if you jail all of your criminal defendants at our facility and pay us. We will give you water if you buy sewage services from us. We will give you water if you do, and the list goes on. In your view, is there any principle stopping point or can a municipality tie the provision of water services to anything else? In this case, given what the Georgia legislature's authorization was, the only limits are these. First, that the state of Georgia, through Georgia code section 3665-2, has not itself placed any constraint on certain types of antitrust claims for which LaGrange is exempt from and certain types which it is not. So a tying claim generally is encompassed within the broad intent of the statute from the state legislature, which is that the city enjoy immunity to the full extent that the state itself would. There is also a limiting principle in that Georgia's statute itself is first limited to apply only to counties and municipalities. That particular code section would not authorize anti-competitive conduct in such a broad way should the state appoint a state actor through a commission, authority, or agency. And finally, the statute itself is also limited in that a county or municipality is only entitled to such broad antitrust immunity if it is exercising a power specifically granted by law. In this case, the state of Georgia has specifically authorized municipalities to regulate water utilities, also to regulate in the natural gas arena. So the circumstances in this case involve only municipal conduct that is authorized by the state. So there's no limit, despite what you've tried to say. In other words, if the state allows you to regulate an area without limitation, then a municipality can tie services in that area to anything else. The limit in this case comes under the Parker Doctrine itself, and it is that the limit shall be dictated by the state. Okay, then tell me about this language in FTC versus Putney Health Systems. Quote, simple permission to play in a market does not foreseeably entail permission to market unlawfully. A reasonable legislator's ability to anticipate an anti-competitive possibility falls well short of clearly articulating an affirmative state policy to displace competition. How does that language fit within the rule that you're articulating? It is true because Phoebe Putney, like many cases, including Kay Electric, was about the from a delegating statute itself by inference what it was the state intended with respect to anti-competitive conduct. That is distinguishable from this case. The delegating statutes at issue in Phoebe Putney were different. They were general authorizations giving hospital authorities general corporate powers, and what the court said, again, citing favorably to Kay Electric because it was a similar statutory structure at issue there, unlike our case, that general corporate powers do not themselves give you permission to act anti-competitively in exercising those powers. That is not what we have at issue in this case. We have two sets of statutes, both of which support the city's immunity claim. First, the state of Georgia has expressly said and did so only a year after the Supreme Court articulated the MidCal test, used the words that the state of Georgia articulates clearly and expresses affirmatively its intent that for powers specifically granted by the state to a municipality, the municipality is to enjoy immunity to the full extent of the state. Is your argument that the legislature foresaw all sorts of antitrust violations with no limit? It is our position that it was the intent of the state. No, no. Foresaw all sorts of antitrust violations without limit. With respect... Foreseeability is a key here, is it not? I would disagree with that in light of the language of the Georgia Code section. Not anticipated at all? The test articulated by the Supreme Court is a clear articulation test where the state's intent has to be clearly articulated and expressed affirmatively. Well, as I read this, the state said you can go anywhere you want in the county and sell water and sewage. You can use eminent domain, you can make a deal with another municipality or whatever. That's water and sewage. They are... And that's... And the state says you're immune from antitrust liability for that. But we're talking about gas now. They are immune, yes, to the extent that they are in the... So the question is whether the legislature foresaw this tie-in arrangement or any other kind of antitrust arrangement other than territorial allocations and things of that sort having to do with water and sewage. I disagree that foreseeability is the test, and here's why. Does it matter is your point? Yes. Your point is it doesn't matter. I want to understand your point. It does not matter. All that matters is that they granted the city the right to sell water and sewage without any... and to engage in eminent domain, make deals with other municipalities, which may be uncompetitive. Yes. Okay. Since they did that, there's no bar on other antitrust violations having nothing to do with water and sewage. Assuming I understand your question correctly, I think that I agree. And the point that we are making is that the Supreme Court's test is a clear articulation test. The concepts of foreseeability and the inherent logical and ordinary result that are articulated in cases following Parker, Midcal, into Phoebe Putney and forward come in the context where the court is trying to decipher from the delegating statute inferentially what the state intended and how far it intended to go in allowing its state actors to engage in anti-competitive conduct. We don't have to get into the foreseeability analysis because the statute itself, 3665-2... Let me tell you my problem. And I do think this is a hard case because the Georgia statute is so broad. But the Georgia statute does say, and I'm thinking of 3665-2, that it has to be in the exercise of the powers granted. This power at issue is the water power. It seems to me that two plausible interpretations of in the exercise of such powers, one, your any anti-competitive conduct that they want to. Seems to me another plausible interpretation, especially all statutes are written against the background of the present law, and the present law, of course, is the antitrust law, includes the antitrust law. So the other plausible interpretation, it seems to me, is that in the exercise of such powers, we do contemplate anti-competitive conduct within that market, but not unlimited into any other market. What's wrong with that? And whether you talk about foreseeability or whether you talk about clear articulation, Phoebe Putney clearly says the law is you've got to at least have clear articulation. I don't see any clear articulation in 3665-2 that the exercise of the powers should be unlimited. There is no, it does not say that the exercise of powers is unlimited. It says that there is a limit because the immunity is to the antitrust laws. So what that statute is doing is the state legislature coming forward and saying we the state have complete immunity from all forms of antitrust claims, including tying claims, which are inherent conduct covered by the Sherman Act. Had the state wanted to exempt a tying claim from its full and complete grant of immunity, it could have expressly done so, but it did not. A tying claim inherently involves two different markets. You have a tying and a tied market. Rather than exempt those types of claims. Do you want to say some rebuttal time? Well, just to finish this. No, no, no. You're far over. Sure. You say some rebuttal time. Thank you. Mr. McGibbon. May it please the court, I'm James McGibbon on behalf of Diverse Power. In the case of Phoebe Putney, the court held that the ultimate requirement is that the such that the challenged anti-competitive effects can be attributed to the state itself. The court in that case said, and at least two of your honors I think are familiar with the facts of that case, but they said that despite the fact that the legislature had allowed the hospital authority to acquire other health care entities, they hadn't appreciated that they might do so anti-competitively. Applying the clear articulation test to the law before us, we conclude that the respondent's claim for state action immunity fails because there's no evidence the state affirmatively contemplated that hospital authorities would displace competition by consolidating hospital ownership. It is the challenged restraint that must be affirmatively contemplated by the legislature under the language of Phoebe Putney. It is the challenged anti-competitive effects that have to be contemplated. Now, the response of the city is that, well, the legislature said, basically, you know, cities can do whatever we want, we want them to be immune. Well, the legislature enacted that statute as part of the water deal, as I understand it. The water deal? Yeah, 30.2 rides along with 35.5, is it not? Or is it a freestanding immunity statute? Yeah. You follow me? The gas provisions are not part of that part of the code. Two refers to the water and sewage, does it? Does it not? No. It does not expressly, but it is. Right. Well, yes. Well, yes. The powers specifically granted by the law are those to engage in water and sewer. And it just sort of boggles the mind to think that the legislature there was affirmatively contemplating that when given the right to regulate water and sewer, the city could then go out and do anything it wanted. I mean, you know, it could go beyond what Judge Jordan suggested. It could go to, if you want to buy our water, you've got to buy these furnaces. And then they could take a share of the profits from the furnace manufacturer. Or they could say, you have to buy our water filters, for that matter. That would be at least a little closer. So the point is that, yes, I think the legislature was concerned primarily that cities not be sued for antitrust damages. And the federal government sort of handled that by putting in a law that said that the antitrust claims the plaintiff can't recover damages, trouble damages, against the city. But I think that was their main concern. They wanted, in a way, to grant blanket immunity to cities just so they wouldn't be sued. But they can't grant blanket immunity. As the Supreme Court said in Haley, let me get the exact quote here. When you get that, tell us what page you're on. I'm in the wrong place, just a sec. The state may not validate a municipality's anticompetitive conduct simply by declaring it to be illegal. It's 471 U.S. at 39. In other words, what the state action doctrine is requiring is that the legislature actually look at what it's doing, decide that this is a kind of anticompetitive restraint that it wants to control. It may want to put in a whole regulatory structure that does away with competition altogether. Or it may want to allow them to do something specific. But what it can't do is just say, well, whatever a city wants to do, it's immune. And that's the way this provision reads. Whatever a city wants to do, it's immune. Now, the statute, as you pointed out, really doesn't go that far. All it really does is it says in exercising your power to maintain and operate water facilities, you're immune. It doesn't say in anything else you want to do that relates to that, that you might condition it, that you might stretch out to get it, that you're immune. The argument of the city is really quite tenuous. It says, well, the legislature must have presumed that from the fact that they could operate water and sewer and might be able to do so outside that, well, they must have presumed that they didn't really have to do that. And that's probably true. And therefore, they must have presumed that they could place conditions on that. Well, that, I guess, is true. They could place a condition that they pay a connection fee or something. And from that, they must have presumed that they could place an anti-competitive condition on that. Well, maybe. And from that, they must have presumed that they put an anti-competitive condition that would affect an entirely unrelated market. Now, we've really gone too far. The federal government did not affirmatively contemplate, I'm sorry, the state legislature did not affirmatively contemplate that the city would put in the kind of tying arrangement it has here. And that's the full extent of the issue. I think we understand your position. Okay. Thank you. Ms. Thompson. Thank you. The ordinance at issue here is an ordinance directed to regulating water. And it is an ordinance related only to non-residents of the city of LaGrange. And the state of Georgia has specifically granted the city authority to exercise discretion in deciding whether to offer such service to non-residents. And inherent indiscretion is deciding what conditions you may place on deciding whether to provide such service. Well, can you, putting this outside of the antitrust context, can you place, can a city be sued for placing any conditions on the provision of water service to non-residents? Or is that an area that there is no liability for? So the city of LaGrange says, I'll give you a crazy example. City of LaGrange says, we'll give you, you're a non-resident, you're outside of our city boundaries, we'll provide water services for you. If you provide a $500 yearly contribution to the blank party, insert Democratic, Republican, Libertarian, whatever you want every year. Legal? That under laws that are not the antitrust laws. That would be the illegal exercise of the police power. Yeah, I mean. So there are limits. There are limits. My only point was you can't start from the position that because it deals with water, everything is fair game. That's not the case, right? It is not our position that they are immune from all claims. It is our position that they are immune from federal antitrust claims under the Parker Doctrine. That is all that Georgia Code Section 3665-2 says. It does not attempt to immunize the city from all challenges to the ordinance, only from federal antitrust challenges, which is where it ties in with the Parker Doctrine. Why isn't a good way of thinking about this to say, given that the onus, as you indicated, is on the state to provide what sort of antitrust immunity it wants for its municipalities, to only assume that that immunity goes only to areas where the state has given the municipalities complete authority to operate. So in this case, you've got water, but now you need the other tied claim, which is electricity or gas. And if the state has given municipalities complete authority to do whatever they want in those two areas, then maybe you can infer that the grant of antitrust immunity flows to a tying of both of those markets, but not otherwise. Because the grant of immunity here is up to the state. And the question is, the state has the ability to grant antitrust immunity to the full extent that it enjoys such immunity itself. If it appoints regulatory powers to a municipality, which it has done here, then that municipality is entitled to immunity up to the full extent that the state is, because the state has said so. I think it's important here, too, to recognize that Georgia Code Section 3565-2 was enacted in 1981, decades after the Georgia Supreme Court decided the city of Moultrie case. That case was not an antitrust case, but there was the constitutionality of an ordinance similar to this one, in that the city of Moultrie there was providing water to non-residents and was charging more to residents who chose not to use the city's electrical services. Citizens challenged the constitutionality of that. The Supreme Court of Georgia upheld that ordinance as constitutional. That activity, meaning that a city was providing water and placing some condition or restraint that impacted another market, was in existence. And the Georgia legislature was aware that the regulatory power was being exercised in that way when decades later it enacted the 3665-2 provision that itself is unlimited. The Sherman Act includes tying claims and has always included tying claims, which themselves involve claims where there is abusive monopolization. Are you suggesting that there is legislative history, which Georgia legislature doesn't have, as I understand, to the effect that the Moultrie case decided when? When was Moultrie decided? Moultrie was decided in 1955. And we're talking about enacting something in 81 a long time later. Correct. And you're not suggesting that the 81 Act was intended to reverse Moultrie? It was not intended to reverse Moultrie. The point of my bringing Moultrie up is that when the Georgia legislature enacted the broad statute conferring immunity on municipalities in 1981, it was on notice at least because of Moultrie and the decision decades earlier where a city ordinance was put directly at issue and that ordinance involved a city's regulation of a water utility that had some lead over effects into the electricity market because the city of Moultrie was charging more. Even if you're suggesting some connection there, it would not be a clear articulation, I would say. The clear articulation in this case comes from 3665-2. And it is that the only limitation that the state has placed, it has decided to allow municipalities to take over the regulation of water utility. And it has also elected not to constrain the grant of immunity that the state is entitled to in any way such that tying claims are exempt from immunity and other types of antitrust claims are somehow covered. It is the state's position and the state's right to decide both the availability and the scope of immunity. And in this case Thompson, we'd be very liberal with your time. The red light's got you. Thank you. The last case, Brown versus